Chief Justice Robertson,
delivered the opinion of the court.
In 1835, David McChord settled upon a tract of land, which was claimed by Thomas Bodley. It does not appear that McChord had any pretence of claim to the land, or had ever asserted any. Shortly after his settlement, Bodley agreed to sell him one hundred acres, including his improvement, and to make him a special warranty deed therefor, whenever he (McChord) should pay him the stipulated price, $¡100.
McChord continued to reside on the land without title, and without having paid or ofFered to pay the $¡100 or any portion thereof; and in 182-1 sold his right tohis son, William K. McChord, the defendant. Thereupon Bodley, on the application of the defendant, covenanted to convey to him the one hundred acres of land, by deed of special warranty, for $150 in commonwealth’s paper, on the payment of $75, one moiety for which indulgence was given, the other moiety having been paid at the time of the contract»
Pogue, as assignee of the note for the $75, having, after it became due, obtained a judgment on it against McChord, the latter filed a bill in chancery, injoining the judgment, and praying fora rescisión of the contract, because, as the bill alleged; Bodley was insolvent and had no title to the land.. Bodley insisted that he had a legal title to the land, but did not, as required by the bill, exhibit his muniments of title.
On the hearing, the circuit court perpetuated the injunction, and rescinded the- contract, and decreed, that Bodley should refund to McChord $75 in-notes, of the bank of the commonwealth, with six per cent interest thereon, from the 25th of August, 1825; the time when it was paid.
And moreover decreed, that “in as much as the complainant did not receive from said Bodley, the possession of said tract of land, the court cannot decree him *476 to give or surrender the possession thereof to said Bod* ley, but he is left to seek his remedy at law, if any, to recover the same.”
Covenant to ' convey land by deed of special warranty^ implies that covenantor.has a legal title regularly derived from the commonwealth; and if covenantor be unable to con,\ ey such a title, biscov-enant is hroksii,
Such covenant should be good against the state.
The decree of rescisión is approved. Á covenant to conyey title by deed of special warranty, implies, that the covenantor has a perfect legal title, regularly derived from the commonwealth; and if he shall be unable to convey such title, his covenant wiil be broken.
The only difference between a covenant of speciai warranty, and one of general warranty is, that the former will not be broken, if the covenantor had the evidence of a legal title, as between himself and the commonwealth, when the conveyance was made, and permitted the vendee to enjoy thé benefit of it,, without disturbance by himself or any other person claiming under him, and the latter covenant will be broken, if the covenantee be evicted by any title adverse and superior to that of the covenantor, although he had the. evidence of a legal title peifect in itself. There may be many patents to the same land, although but one 0/ them can hold it.
When a party covenants to convey, by deed of special warranty, he thereby under* akes to convey a legal title, good against the state, but refuses to guaranty the superiority of that above any other adversary title. He cannot convey a legal title, unless he has one in himself.
The covenantee stipulates for, and expects a legal title. He should not be required to accept a deed, which would vest in him no r.ghl. All he could exact, would be a conveyance of a legal title, regularly derived from the commonwealth. But this much he pi ay demand as his undeniable right, and there is fail ure of consideration, unless the covenantor can convey such a title. A junior patentee owns the land, until a senior patent, for the same land, be shown.
As Rod.Iey failed to snow that he had such a title, it was the duty of the court to decree a rescisión of the contract.
But the circuit court erred first in decreeing a restitution of commonwealth’s paper in kind, and the payment pfinterest upon it; and second, in withholding an order *477 for the restitution of the possession of the land to Bodley.
Where purchase money for land was paid in commonwealth’s paper, error, on rescisión of the contract of sale, to decree restitution of the common-w’l h’s paper, in kind'. In mch case, the law implies a promise to refund the value only of the commonwealth’s paper. if vendee obtained possession of the . land from vendor, he cannot, on a rescisión of the contract, re ist vendor’s oFthe possession,
1st. McChord is entitled <.nly to the value of what he had paid. To this extent, the law will imply a promise by Bodley. But we know of no law or principle of equity, which will, without express contract, authorize a decree to any other or greater extent. The val le of the 875 on the 25th of Angust, 1825, is the ne phn ultra of McChord’s equity. He is not entitled to interest on even this value, as he had the use of the land, which must be considered as more than equivalent to the interest on one moiety of the price:
2d. It is true, that it does not appear from direct proof, that either the defendant or his father obtained the possession from Bodley. But it is equally true, that there is no evidence or even suggestion, that either of them entered adversely to him, or undercolor of title.
If D. McChord had obtained the possession from Bodley . in 1805, or had entered under Bodley, the decree seems to concede, as is certainly true, that Bodley would be entitled to restitution.
But there may also he cases in which, on the rescisión of contract for land, the occupant should be compelled to surrender the possession to the covenantor, al-thongh it was not originally acquired from him.
‘'•If one enter on land without any title or claim, or color of title, the law adjudges the possession to be in subservience to the legal owner.” Jackson vs. Thomas, XVI Johnson, 301. The same doctrine is maintained in the following cases: Brandt vs. Ogden, I Johnson, 157; Jackson vs. Sharp, IX Ibid, 163; Jackson vs. Ayres, XIV Ibid, 225; Jackson vs. Croy XII Ibid, 427. This is the inference of Jaw in the absence of proof of a hostile entry.
A person entering without color or claim of title may hold adversely to the world. But an adversary possession will not be presumed. The doctrine of adverse possession is to be taken strictly, and must be made out by proof. Every presumption is in favor of a possession in subordination to the title of the true . owner.”
*478 It may be said, however, that Bodley has not proved that he held the legal title. He has not done so directly. But we consider the defendant estopped to withhold the possession by requiring positive evidence of his title.
As the defendant has failed to show, that either his father or himself ever had any claim to the land, except what they derived from Bodle/, by making a contract with him, for a conveyance of the title, they acknowledged that he had title, and thereby, there being no fact to the contrary, admitted that they held under him; and consequently, “must be considered in the same- light as if (they) had entered under the agreement.” See XIV Johnson, 225; XII Ibid, 427; 11 Johnson’s Cases 353. When there is no evidence of an adversary possession or of title, even an application, by the person in possession to another claiming title, to purchase it from him, is presumptive evidence, that the applicant holds under the claimant; 'see the cases supra.
A hostile entry may be changed into an amicable-possession ; and a person who enters adversely to the right or another, may afterwards hold under the title of that other, and by such tenure, may be estopped- to deny the title under which he so held. He will alwavs be estopped, when having entered without color or claim of title., he afterwards makes an agreement for the pur--chase of the title from the claimant or holder of it.
An application of the foregoing principles to the facts of this case will show, that the defendant must be-considered as holding under Bodley, and therefore, cannot object to a restitution of the possession to him, merely because there is no positive proof, that JD. Mc-Chord entered under Bodlcy’s tille; nor becauseBodley has failed to exhibit the evidences of his title.
The defendant, after having enjoyed, in connexion with his father, the possession and use of the land for twenty-five years, -without the assertion or the shadow of title, independently of Bodley, should not be allowed to rescind his contract with .Bodley, and hold the land until he can be evicted in an action of ejectment. Bodley should not, under such circumstances, be compelled to prove positively, that he holds a perfect legal title, and that the defendant has held under him, before *479 he can obtain the possession. Such a requisition would be unjust and unequal in its operation. It would be unreasonably advantageous to the defendant.
petition for a re-hearing,
Hoggin, for plaintiffs; Mills and Brown, for ’"defendants.
We are therefore, of opinion, that restitution should be made to Bodley by the chancellor.
Bodley should pay for all ameliorations. McChord should account for waste, if any has been committed. Bodley should take the land without rents, and Mc-Chord should take the value of his commonwealth’s paper without interest.
Decree reversed and cause remanded, for a decree conformable to the principles of this opinion.